Service, 22829. Mr. Laidman. Your Honors. Thank you and good afternoon. May it please the court. My name is Mark Lane. I'm with the firm Lane Kroll LLP on behalf of petitioners, appellants, Ahman Anjali Soni. This appeal raises several issues. I'm going to focus on only one primarily today, given the time constraints, and that is whether the statute of limitations was properly extended to issue a notice of deficiency and tax assessment against the Sonis. The issue is a 2004 tax return filed as a joint tax return in November 2005. It claimed losses from a company called Beauville Corporation. The statute of limitations for the notice of deficiency would have expired in November 2008 unless it was validly extended. Following an investigation into Beauville, the IRS issued a notice of deficiency to the Sonis in March 2015. This would be seven years after the statute expired unless it was validly extended. At trial, the IRS relied on two key documents to argue that the statute had been extended. The first was a power of attorney, a Form 2848 power of attorney. The second was a Form 872 consent to extend the statute of limitations, which purported to extend it to June 2009. So the tax court made a finding, it seems to me, as to both of those. Is that correct? Yes, Your Honor. The tax court made findings as to both of those. Subject to clear air review. Is that also correct? The fact aspects, of course, are subject to clear air review, yes. Now, there are two problems with those documents. The first problem is that the power of attorney, Form 2848, was not signed by either of the Sonis. It was signed by an accountant named Alan Grossman for the Sonis and for himself. Mr. Grossman was not an accountant for the Sonis or any of their interests. He was an accountant for Beauville Corporation, the company into which the audit originally had been made. He signed his name and the Sonis' names to the power of attorney and then signed the extension based on the power of attorney. In other words, he forged the names on the power of attorney. Mr. Grossman testified at trial that he signed the Sonis' names to that power of attorney without their knowledge or consent, without their expediency, and that he never told them that he had done so. So everything that he did pursuant to that power of attorney, he did pursuant to a forged power of attorney. Mr. Grossman admitted under oath at trial that he knew that he was lying, quote unquote, to the IRS when he did that. Notably, Mr. Grossman was subsequently convicted of federal charges of fraud and forgery and served time in federal prison. In addition, both of the petitioners testified at trial that they did not know that Mr. Grossman had signed that document. They never authorized him to do so. What's odd about this is that the tax court determined that that testimony was not credible. Is that right? The tax court made a general comment that she didn't find the testimony credible. And also Mr. Grossman's, I believe. Of course, that's subject to the same kind of review as any other fact finding. And our position is that the fact findings are completely contrary to all the evidence and not supported by any evidence. Everything that I just said was unrebutted at trial. So because the power of attorney pursuant... The court actually observed testifying. That's correct. Of course, Your Honor. And of course, we have not had that benefit. That's, of course, of course, Your Honor. It is. I'm just trying to figure out what is it that renders that testimony credible in your view? It may be unrebutted in the sense that I suppose the people who gave the testimony are the only people who have firsthand knowledge of what was said and done between Omsani and Mr. Grossman. But if they are not credible, then where do we stand? What is there that makes it seem... What independent evidence is there that supports that? Well, there is no other evidence, for one thing. And additionally, there's a fundamental legal question here as well, and that is whether a forged power of attorney has any effect in force at all. Well, but it's not forged if the person who signs on behalf of someone else was authorized to do so, whether expressly or implicitly by a course of conduct. And Mr. Grossman was Mr. Sani's or the Sani's collectively representative in dealing with the IRS throughout these proceedings, both before and after this extension was granted. He was not, Your Honor, respectfully. He was not. He was not their representative at any time until years later. He was never asked to be their representative. He was a representative of Bovell in connection with the audit of Bovell. When Mr. Sani received documents in the mail from the IRS related to Bovell, he sent them to Mr. Grossman in anger because he was being audited based on Mr. Grossman's work, essentially, and basically told Mr. Grossman, you need to do something about this. He never asked Mr. Grossman to be his representative. But then, so what do you make of the argument on the other side that your client then signs six additional extensions? Those have no impact or effect. But you're not challenging that at least right now? No, Your Honor. All those subsequent extensions would be invalid if the first one was not itself valid. I understand that, but there is a sort of a post hoc ratification argument. Yes. And the tax court relied on ratification and implied consent, both incorrectly in our view. Implied consent must be based on events that took place prior to the axiom question. The court relied only on events that took place after the axiom question to find implied consent. And ratification, of course, requires conduct with knowledge of the thing being ratified, which there is no evidence whatsoever that the Sonys had any knowledge that these documents had been signed by Mr. Grossman until much later, years later in preparing for trial. There's a further problem with these documents that I want to just touch on. And it's also a legal as well as factual question, and that is that the power of attorney itself was dated after the first extension. So in order to find the first extension valid, the court would have to hold, in effect, that a power of attorney can be applied retroactively or that the court can simply rewrite the dates on the power of attorney, which is effectively what the tax court did. The tax court found that the document, the power of attorney, should have been dated before the extension. Of course, if it was going to make the extension valid, it should have been, but it wasn't. And beyond that, the IRS was fully aware of this, well within the first statutory limitation period. They received these documents in March 2008, six months before the statute of limitations would have expired, and two revenue agents at the IRS made notations which were admitted into evidence at trial that acknowledged that there's a problem. Specifically acknowledged there's a problem with the power of attorney and there's a problem with the statute of limitations. The IRS was fully aware of this, and they did nothing about it. They could have and should have done something about it. They just pretended it wasn't a problem. It was and is a to have different dates and different scope of power. The tax court said this was a scrivener's error. It was actually signed in 2006, not in 2008. The tax court did find that. So it's not rewriting it. It's acknowledging what is written, but says that it was actually signed on a different date. And isn't that based in part on when the documents were actually sent by the IRS to Mr. Grossman in the first place? It is, Your Honor. However, to find that, to affirm that finding is effectively to hold that a power of attorney can be rewritten based on what a court thinks it should have said. Not at all. It's a question of when in fact it was signed. That's a sufficient evidence on an erroneous theory or by making a mistake as to what it said about when the documents were sent and received. But what you're saying is that if a document bears a date, it is conclusively presumed that it was signed on that date. And to make any other factual inquiry would be to rewrite it. I'm not sure that's correct. That's not exactly what I'm saying, Your Honor. I'm saying at least with respect to something as important as a power of attorney, extending a statute of limitations, the date on the face of the document should control. Well, that's what I just said, except you're limiting it to, this is fine. You're saying it's a conclusive presumption as to the kind of document that I would need it to be conclusive for, but not for any other kind of documents. I'm not saying that would be a general rule. Well, there's no other kind of document at issue in this case. I understand, but you're basically saying that we need to, whatever the evidence would be, however strong the evidence, that 20 bishops came in and swore that they had seen the man sign this very document in 2006, and he testified that he did it in 2006, and it was just a slip of the pen, and it wound up being 2008. It would still have to be conclusive that it's dated 2008, but that's not the case. That's not what I'm saying. Because there weren't 20 bishops. Yeah, so you're saying that the evidence on which the tax court relied was insufficient to support its finding. But that's not a matter of rewriting the document. That's a simple question, like any other, of whether the finding is clearly erroneous based on the record that we have before us. Of course, I would accept that characterization. If you accept that with all of the time stamps on that document, with everything else, wasn't there some basis for the tax court to determine that it was, in fact, a Scrivener's error? The tax court relied primarily on testimony and evidence that the documents were mailed after the dates on the documents. Yes, that was the basis. Some evidence. Yes, there is that. I don't think that's sufficient. I appreciate that you don't think it's sufficient, but there's some evidence. Thank you. You've reserved two minutes for rebuttal. We'll hear from Mr. Dale. May it please the court, my name is Ivan Dale on behalf of the Commissioner of Internal Revenue. There's no question in this case that the Sonys are unable to substantiate a $1.7 million loss claimed on a tax return. The only question is if they are able to escape the consequences of that unsubstantiated claim to escape paying taxes by disavowing documents filed with the IRS, ostensibly bearing their signatures and on which the IRS unquestionably relied. As the court noted, the Sonys' problem here is that their disavowal depends almost entirely on the testimony of two persons when the fact finder found not to be credible. And the arguments here didn't really deal with much of the circumstantial evidence found by the court that undercut the Sonys' claims. So there were a couple of, so the first matter that was discussed was a power of attorney that counsel took it as a given that it was forged, that Mr. Sonys' signature was forged. But the tax court found otherwise. The tax court found that Mr. Sonys signed that power of attorney form. What was the evidence in support of that? Yeah, so she looked at the signatures. There were, they have their signatures on the tax return and on subsequent consents. There were six later consents that Mr. Sonys signed. And the signature on the power of attorney looked just like those. And it didn't look like Mr. Grossman did conceitedly sign their, he didn't have to, but he signed Mr. Sonys' name on the second consent form. And the signature on the power of attorney looked nothing like Mr. Grossman's attempt to replicate Mr. Sonys' signature. So just the eye test is the first thing. But then there were also a lot of other circumstantial evidence that the Sonys, and Mr. Sonys in particular, treated Mr. Grossman as his representative. I mean, he, you know, it took, well, first of all, so the forms, the consent forms that said that Mr. Grossman was the Sonys' representatives was mailed to the Sonys right after they were signed for their record. So they were on constructive notice there that consent forms had been signed on their behalf by Mr. Grossman as their representative. They didn't object. That happened not once, but twice on two separate occasions. Consent forms signed by Mr. Grossman on behalf of the Sonys as their representative. Mr. Sonys himself, the final consent form, he actually signed that form personally, admittedly, and identified in that form that Mr. Grossman was the taxpayer's representative. A couple of years after the fact. Yes, several years after the fact. But then throughout the case, protest letters, the consent form itself, so Mr. Grossman actually called the IRS and said, send me the consent form and I'll execute it and send it back so you guys don't start deficiency proceedings against my client. And the IRS said, well, we don't have a power of attorney form for you. So we can only send it to the Sonys. So they mail it to the Sonys. And then the IRS gets that form back nine days later with Mr. Grossman listed as the representative. The only way that could have happened is if the Sonys took it to Mr. Grossman for him to sign and then return to the IRS. That was before this. That is not something that happens with respect to a later extension. That is the first extension that we're talking about. Right. That's the very first extension. And another point about that extension is I think the presumption was that the Scrivener's error in at least that opening argument was that the Scrivener's error was in the power of attorney form. But the tax court found that the Scrivener's error was in the first consent. So the first consent was dated 2006 and the tax court found what they must have meant was 2008 because there was only a nine day period within which the taxpayers or Mr. Grossman could have had access to this form. And it makes no sense, by the way, to send out a consent to extend the limitations period in 2006 when the limitations period isn't going to expire, as counsel said, until November of 2008. And the IRS said it was its usual practice to wait until at the earliest, nine months before the expiration of the limitations period, to even broach that topic. So there was lots of circumstantial evidence as to the date on which the consent was signed. There was lots of circumstantial evidence that Mr. Grossman was, in fact, proceeding as the authorized representative of the Sonys. And the only contrary evidence is the testimony of Mr. Sony and Mr. Grossman who, again, I mean, Ohm testified that at first at trial he testified that these other six consents, that he had never seen them before until at counsel's table and preparing for trial. And then counsel sort of gently prodded him and said, you know, actually, and he had to walk it back, he said, oh, what I meant to say was that was the first time that I saw them after I signed them. And there were lots of other like inconsistencies in the testimony of Ohm Sony that we list on pages 25 through 27 of the brief. Granted, his demeanor is one factor to consider, but there are plenty of evidence just from me reading the transcript. I mean, I wasn't present in the room, but just from reading the transcript, I can see a lot of inconsistencies, a lot of doubts I would have about Mr. Sony's testimony just based on the papers. There were just a couple of other issues that weren't really discussed and I just want to address them very briefly. The Mrs. Sony, the issue of whether she tacitly consented to the filing of a joint return and consented to Ohm or Mr. Sony filing or dealing with the IRS on her behalf. There was some pretty specific testimony to that point. She was asked directly, do you trust your husband to handle all your tax matters? And she answered, I did. I do. I will. She testified that included filing tax returns, dealing with the tax court, and that she agreed that Mr. Sony could deal with the IRS on her behalf. So that is supported by substantial evidence. There was some question about the penalties involved in the case. I think a question of whether the taxpayer had reasonable cause, Mr. Sony's had reasonable cause for their late filing and they claim reliance on an advisor. But number one, an advisor never advised them not to file a tax return. They said, well, we had reasonable cause because we didn't owe any tax. Well, you have to file a tax return based on the amount of income you have, not on the amount of tax. So they had a filing requirement anyway. And there was no effort, and the burden is on them to show reasonable cause and the absence of willful neglect. And I think they concede in their reply brief that there is contrary case law to their position. And then finally, there was a question about penalties with respect to failure to keep adequate records. Mr. Sony was advised by Mr. Kresge, who was another accountant he dealt with, that he needed to keep proof and accurate records. And in the IRS regulations, proof of adequate records is, or failure to keep adequate records is a basis for imposing this addition to tax. And the and so, I mean, he conceded, he argues that he didn't have to keep records because Beauville was the partnership and then Beauville should have kept the records. But really in this case, his loss that he can claim is based on his, is limited to his about our own precedent. Is there a case from our court in which we've discussed a situation like this where it's not just that the spouse's signature is missing, but it's in fact supplied by someone else? So O'Connor, as I understand it, is one where the signature is missing in connection with determining whether it's a joint filing? Yeah. In O'Connor and Federbusch, which are the only two second circuit cases of which I'm aware, there was a I believe, I think, I don't think you can tell from Federbusch, but O'Connor it was a blank signature. But there are cases from other circuits in which And from the tax court itself in which a forgery would reach the same result. It's a question of intent on the non-signing spouse. So the addition of a forged signature really doesn't impact that analysis much at all. In this case, the spouse or the child, it doesn't matter analytically? Yeah, analytically. It has not mattered in any case of which I'm aware outside of this circuit. Or in this circuit, for that matter. I see that I'm out of time. Judge Kibanis, do you have any questions? Oh, I have no questions. Okay. Well, thank you. The findings of the tax court are supported by substantial evidence and the decision below is correct and should be affirmed. Thank you very much. Thank you, Mr. Lane. I just want to address one final point that I didn't really get to before. And that is the application of the tacit consent doctrine. The tax court found not only that consented to the signing of all these other documents, the power of attorney, the extension of the statute of limitations. And that's just wrong as a matter of law. The tacit consent doctrine has never, to my knowledge, and counsel has not cited any contrary case, has never been applied beyond the question of whether a joint return not signed by one spouse was nonetheless a joint return for that spouse. It has been repeatedly held to be a narrow exception to the signing requirement just for the purpose of joint returns. The tax court here stretched the tacit consent doctrine far beyond its historical application. And to affirm that would set precedent that uniquely, and I think for the first time, extends that narrow exception far beyond its historical limits. Thank you very much. Thank you. Judge Kovats, any questions? No, I'm fine. Thank you very much. Thank you.